UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMES JOHNSON                                    CIVIL ACTION

VERSUS                                           NO: 11-2773

PPI TECHNOLOGY SERVICES,                         SECTION: R
L.P., PSL, LTD., TRANSOCEAN,
LTD., and AFREN, PLC

### ORDER AND REASONS

Before the Court is defendant PPI Technology Services, L.P.'s motion to dismiss plaintiff James Johnson's claims against it under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, to dismiss on the grounds of *forum non conveniens*. For the following reasons, defendant's motion is denied.

I.  BACKGROUND

This case arises out of an incident aboard the HIGH ISLAND VII, a drilling rig operating off the coast of Nigeria.[1] On November 7, 2010, while plaintiff was employed as a drilling supervisor aboard the rig, Nigerian gunmen boarded the rig to rob and/or take hostage its occupants.[2] In the melee, one of the gunmen shot plaintiff in the leg with an AK-47 rifle, causing injuries that required multiple surgeries, a muscle transplant,

---

[1]   R. Doc. 1 at 3.

[2]   *Id.* at 3-4.

months of hospitalization, and continuing therapy.[3] Plaintiff alleges, *inter alia*, that the defendants were negligent, that the vessel was unseaworthy, and that PPI is responsible for providing him maintenance and cure benefits based upon general maritime law.[4]

Defendant PPI moves for dismissal under Federal Rule of Civil Procedure 12(b)(6).[5] It contends that it neither employed Johnson at the time of the incident, nor owed him any duty of care with respect to operations aboard the rig. PPI contends that Johnson was in fact an independent contractor of PSL, a Belizean entity with which PPI had contracted.[6] As evidence, PPI attaches to its motion a contract between Johnson and PSL in which "[t]he parties agree and acknowledge that [Johnson] is not an employee of [PSL] for any purpose whatsoever, but that [Johnson] shall be considered at all times an independent [c]ontractor."[7] Johnson, meanwhile, contends that PSL is a shell corporation of PPI's creation, and that notwithstanding the contract with PSL, he was actually a PPI employee when the Nigerian gunmen injured him.

---

[3] *Id.* at 4.

[4] *Id.* at 5-9.

[5] R. Doc. 7.

[6] R. Doc. 7-3 at 3.

[7] R. Doc. 7-4 at 4.

PPI also moves the Court, in the alternative, to dismiss for *forum non conveniens*, arguing that a Nigerian court is the more appropriate forum for this litigation. Johnson opposes this alternative grounds for dismissal.

II. ***FORUM NON CONVENIENS***

The doctrine of *forum non conveniens* essentially allows a court to decline jurisdiction and dismiss a case, even when the case is properly before the court, if the case may be tried in another forum more conveniently. In re *Volkswagen of America, Inc.*, 545 F.3d 304, 313 (5th Cir. 2008). The doctrine "rests upon a court's inherent power to control the parties and the cases before it and to prevent its process from becoming an instrument of abuse or injustice." In re *Air Crash Disaster Near New Orleans v. Pan American World Airways, Inc.*, 821 F.2d 1147, 1153-54 (5th Cir. 1987) (en banc), *vacated on other grounds sub nom.*, *Pan Am World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989), *opinion reinstated on other grounds*, 883 F.2d 17 (5th Cir. 1989) (en banc). The doctrine allows dismissal of a case "because the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else." In re *Volkswagen*, 545 F.3d at 313 n.8 (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)). Because the doctrine "not

3

only denies the plaintiff the generally accorded privilege of bringing an action where he chooses, but [also] makes it possible for him to lose out completely," it is subject to "careful limitation." *Id.*

In deciding a motion to dismiss for *forum non conveniens*, a court is not limited to the allegations in the complaint, but may consider all of the evidence before it. *See Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 158-59 (2d Cir. 1980) (en banc) ("[I]t is the well established practice ... to decide [*forum non conveniens*] motions on affidavits."); *Farhang v. Indian Inst. of Tech.*, 2012 U.S. Dist. LEXIS 3969, at *26 (N.D. Cal. 2012) (on *forum non conveniens* motion, allegations in complaint need not be accepted as true and court may consider evidence outside the pleadings); *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 419 (E.D.N.Y. 2009) (relying on the complaint, affidavits, and exhibits, and not presuming all facts pleaded to be true); *Construtora Norbeto Oderbrecht S.A. v. GE*, 2007 U.S. Dist. LEXIS 79219, at *3 (S.D.N.Y. 2007) (same).

In analyzing whether a case should be dismissed for *forum non conveniens,* the Court must first determine whether an alternative forum exists that is both *available* and *adequate*. *See Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000); 14D Wright & Miller, *Fed. Prac. & Proc. Juris*. § 3828.3 (3d ed.) ("Although some courts conflate these issues, the

availability and adequacy of the supposed alternative forum are better seen as raising independent issues that warrant separate consideration by the court."). A forum is available if "the entire case and all parties can come within the jurisdiction of that forum." *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 379 (5th Cir. 2002) (citing In re *Air Crash Disaster*, 821 F.2d at 1165). A forum is adequate if the parties will not be deprived of all remedies or treated unfairly. *See Alpine View*, 205 F.3d at 221. If the defendant shows that an adequate alternative forum exists, the court must then consider whether certain private and public interest factors weigh in favor of dismissal. *McLennan v. Am. Eurocopter Corp., Inc.*, 245 F.3d 403, 424 (5th Cir. 2001). The defendant bears the burden of persuading the court that a lawsuit should be dismissed on the grounds of *forum non conveniens*. *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007).

Defendant has demonstrated that most American courts have found Nigeria to be an adequate forum in the *forum non conveniens* context.[8] Plaintiff cites the affidavit[9] of Professor Okechukwu

---

[8] *See BFI Group Divino Corp. v. JSC Russian Aluminum*, 298 Fed. Appx. 87 (2d Cir. 2008) (finding that the district court did not abuse its discretion in determining that Nigeria was an adequate forum, despite attacks on the fundamental fairness of the Nigerian legal system); *Chiazor v. Transworld Drilling Co.*, 648 F.2d 1015 (5th Cir. 1981) (district court did not abuse its discretion in determining that Nigeria was an adequate forum); *United Bank for Afr. PLC v. Coker*, 2003 U.S. Dist. LEXIS 20880, at *11 (S.D.N.Y. 2003) (finding "no question that the Nigerian forum is adequate" to litigate libel counterclaims); *Abdullahi v. Pfizer, Inc.*, 2005 U.S. Dist. LEXIS 16126, at *48 (S.D.N.Y. 2005)

Oko, in which the professor discusses the "unrestrained whims and caprices" of Nigerian judicial officers, the endemic corruption, and the judiciary's unfortunate status as a "pliable instrument for the wishes of those with access and power." Nevertheless, plaintiff has cited no case that holds Nigeria to be an inadequate forum. Although plaintiff relies on *Costinel v. Tidewater, Inc.*, 2011 U.S. Dist. LEXIS 10434 (E.D. La. 2011), the court in that case did not specifically find Nigeria to be inadequate, even though it declined to dismiss on *forum non conveniens* grounds. *Id.*, at *15-16. Furthermore, court decisions nationwide indicate that a defendant may easily establish the adequacy of an alternative forum, even in venues that depart considerably from the United States in procedures and remedies. *See, e.g.*, *Norex Petroleum, Ltd. v. Access Indus.*, 416 F.3d 146, 158 (2d Cir. 2005) ("[T]he availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum, nor on identical remedies.") (internal quotation marks omitted); 14D Wright & Miller, *Fed. Prac. & Proc. Juris.* § 3828.3 (3d ed.) (collecting

---

(finding Nigeria to be an adequate forum, and noting that "broad, conclusory assertions as to the relative corruptibility or incorruptibility of the Nigerian courts" is insufficient to cast doubt on the adequacy of the forum); *Aracruz Trading Ltd. v. Japaul Oil & Mar. Servs., PLC*, 2009 U.S. Dist. LEXIS 20868 (S.D.N.Y. 2009) (same).

    9    R. Doc. 19-10.

cases). Considerations of comity may underlie these decisions. *Cf. Chesley v. Union Carbide Corp.*, 927 F.2d 60, 66 (2d Cir. 1991) ("It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation. Such an approach would directly conflict with the principle of comity[.]"). Accordingly, the Court finds that Nigeria is an adequate forum.

PPI has failed, however, to demonstrate that an alternative forum in Nigeria is *available* to resolve this dispute. Here, American defendant PPI has not stipulated to jurisdiction in Nigeria, nor has it made itself available for service of process there. Indeed, PPI has indicated its *refusal* to submit to the jurisdiction of a Nigerian court.[10] The Court finds that defendant has therefore failed to meet its burden. *See, e.g., Home Decor of Elmwood Oaks, LLC v. Jiyou Arts & Frames Co.*, 2009 U.S. Dist. LEXIS 13335, at *14-15 (E.D. La. 2009) (finding that defendant failed to satisfy its burden of demonstrating the availability of a Chinese forum when it failed to waive any jurisdictional defenses); 14D Wright & Miller, *Fed. Prac. & Proc. Juris*. § 3828.3 (3d ed.) ("[Q]uestions of service of process properly are considered by the court in connection with the availability inquiry."). Because a foreign forum must be both

---

[10] R. Doc. 35-2 at 7 n.10.

adequate and available for a court to dismiss for *forum non conveniens*, the Court must deny PPI's motion to dismiss.

**III. MOTION TO DISMISS UNDER RULE 12(b)(6)**

**A.   Treatment as a Motion for Summary Judgment**

In considering a motion to dismiss for failure to state a claim, a court must typically limit itself to the contents of the pleadings, including their attachments. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "If, on a motion under 12(b)(6) or 12(c), matters outside the pleadings[11] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). But uncontested documents referred to in the pleadings may be considered by the court without converting the motion to one for summary judgment, even when the documents are not

---

[11]   For further explanation of what constitutes "matters outside the pleadings," *see* 5C Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1366 (3d ed.):
> Most federal courts ... have viewed the words "matters outside the pleading" as including any written or oral evidence introduced in support of or in opposition to the motion challenging the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings. Memoranda of points and authorities as well as briefs and oral arguments in connection with the motion, however, are not considered matters outside the pleadings for purposes of conversion. The same is true for various types of exhibits that are attached to the pleading, matters of which the district court can take judicial notice, and items of unquestioned authenticity that are referred to in the challenged pleading and are "central" or "integral" to the pleader's claim for relief.

physically attached to the complaint. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) (finding that the district court properly considered documents not attached to the complaint in ruling on a Rule 12(c) motion). The court also may consider documents attached to a motion to dismiss without converting it to a summary judgment motion if the documents are referred to in the complaint and are central to the plaintiff's claim. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citation omitted).

Defendant has attached to its motion to dismiss the agreement between plaintiff and PSL,[12] the agreement among PSL, PPI, and PPI Technology Services, Nigeria, Ltd. ("PPIN"),[13] and the agreement between PPIN and Afren Energy Services, Ltd. ("Afren").[14] The documents are *not* explicitly referred to in plaintiff's complaint and do not "merely assist[] the plaintiff in establishing the basis of the suit[.]" *Collins*, 224 F.3d at 499. Plaintiff also has attached numerous documents to his opposition that "provide[] some substantiation for and do[] not merely reiterate what is said in the pleadings." 5C Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1366 (3d ed.) (recognizing that

---

[12] R. Doc. 7-4.

[13] R. Doc. 7-5.

[14] R. Doc. 7-6.

9

such materials are typically treated as matters outside the pleadings). The Court, in considering these materials, will convert defendant's motion to dismiss into a motion for summary judgment.[15] *See Corsair v. Stapp Towing Co.*, 228 F. Supp. 2d 795, 798 (S.D. Tex. 2002) (considering contractual provision attached to defendant's motion to dismiss to be a matter outside the pleadings, and converting the motion into one for summary judgment).

**B.     Summary Judgment Standard**

Summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party,

---

[15] At oral argument on April 25, 2012, the Court gave the parties notice of its intention to convert the Rule 12(b)(6) motion into a motion for summary judgment.

but "unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation marks omitted).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify

specific facts that establish a genuine issue for trial. *Id.* at 325. *See also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (citing *Celotex*, 477 U.S. at 332).

**C.  Discussion**

PPI contends that because it neither employed Johnson at the time of the incident, nor owed him any duty of care with respect to operations aboard the rig, Johnson does not have any valid legal claims against PPI. Indeed, an employer-employee relationship is essential for recovery under the Jones Act. *See Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 790-91 (1949); *Scarborough v. Clemco Industries*, 391 F.3d 660, 667 (5th Cir. 2004). It is also necessary to recover maintenance and cure benefits. *See Cortes v. Baltimore Insular Line*, 287 U.S. 367, 371 (1932); *Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 279 (5th Cir. 2007). For purposes of recovery, it may be possible to have more than one Jones Act employer. *Guidry v. South Louisiana Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980); *Cordova v. Crowley Marine Servs.*, 2003 U.S. Dist. LEXIS 13567, at *8 (E.D. La. 2003). Further, employer status is not contingent upon

ownership of the vessel on which the plaintiff worked. *Barrios v. Louisiana Construction Materials Co.*, 465 F.2d 1157 (5th Cir. 1972).

The Fifth Circuit has noted that "control is the critical inquiry" in determining whether a party is an employer under the Jones Act. *See Volyrakis v. M/V Isabelle*, 668 F.2d 863, 866 (5th Cir. 1982), *overruled on other grounds by* In re *Air Crash Disaster*, 821 F.2d 1147. It has explained that the "factors indicating control over an employee include payment, direction, and supervision of the employee[,]" as well as "the source of the power to hire and fire." *Id.* "The control [that] is exercised must be substantial[,]" and the "mere possibility of some control over the actions of an employee will not suffice to find an employer-employee relationship." *Id.* Other courts in this district, recognizing an oft-approved Fourth Circuit case as providing additional guidance, have looked to the degree of control exercised over the details of the operation, the amount of supervision, the amount of investment in the operation, the method of payment, and the parties' understanding of the relationship. *Cordova*, 2003 U.S. Dist. LEXIS 13567, at *8-9 (citing *Wheatley v. Gladden*, 660 F.2d 1024, 1026 (4th Cir. 1981) (discussing factors in the context of Jones Act claim and claim for maintenance and cure)). No one factor is determinative, and

courts are instructed to look to the "venture as a whole." *See Cosmopolitan Shipping*, 337 U.S. at 795.[16]

PPI argues in its motion to dismiss that plaintiff was never an employee of PPI but was rather an independent contractor of PSL, the Belizean entity with which PPI contracted. Attached to its motion, PPI provides the agreement between plaintiff and PSL in which the parties agreed that Johnson was to be considered an independent contractor for all purposes. This contract is not determinative of plaintiff's status, because the Supreme Court has held that "such words as employer, agent, [and] independent contractor are not decisive" in determining who is a Jones Act employer. *See Cosmopolitan Shipping*, 337 U.S. at 795.

Johnson submits an affidavit[17] detailing his extensive involvement with PPI personnel during the hiring process, during his employment aboard the rig, and following his injury. His interactions with PPI began in 2010 when he learned from a

---

[16] At the core of plaintiff's allegations is the contention that PPI was his direct employer which hired, supervised, and fired him. Under these circumstances, the Court need not engage in an in-depth evaluation of the factors considered to determine whether an employee is a borrowed servant. *See Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312-13 (5th Cir. 1969) (setting forth the factors). In any event, the two inquiries are related and focus on factors like control over the worker, the right to terminate, the length of the relationship, and the employee's acquiescence in the borrowing. As the discussion above illustrates, there are fact issues sufficient to preclude summary judgment on each of these factors.

[17] R. Doc. 19-1.

contact that Houston, Texas-based PPI was looking for a drilling supervisor. Following the lead, Johnson called PPI's Houston-based phone number and spoke with John Arriaga, who put Johnson in touch with PPI employee Gallan Williams. Williams interviewed Johnson for the position, and on some later date, called back to hire Johnson. He informed Johnson that Sandra Birkline would arrange his travel to Nigeria and help to procure his visa. Birkline spoke with Johnson on several occasions, each time from the same Houston-based phone number. She forwarded Johnson a contract to sign, and when Johnson asked about the entity PSL listed on the contract, Birkline responded that "we just run all our people through Belize." This was the only time Johnson encountered the name PSL during his putative employment with PPI. PPI arranged and paid for Johnson's air travel to Nigeria, his hotel accommodations there, and his transportation to and from the heliport (where the helicopter would fly him to the rig).

When working aboard the rig, Johnson was required to send twice-daily written reports to PPI employees Gallan Williams and/or Jack Rankins that detailed the drilling activities of the last 24-hour period. He was provided an email account with a ppitech.net address, and would converse via telephone with Williams and Rankins each day. Occasionally he also spoke with Ron Thomas, whom Johnson also believed to be based out of PPI's Houston office. Indeed, Johnson did not take any action aboard

the rig without first receiving instructions from Williams, Rankin, or Thomas. Johnson contends that these men could have fired him at any time if he did not follow their drilling instructions precisely. During the length of his employment, Johnson and other drilling supervisors were commonly referred to as PPI Tech employees. Indeed, Johnson insists that he knew nothing of PSL, including how to contact the entity.

After his injury in November 2010, Johnson communicated between 10-15 times with Scott Kirkland, whom Johnson believed to be counsel for PPI in the company's Houston office. Kirkland discussed obtaining insurance coverage for Johnson's medical treatment and informed him that PPI would take legal action against the insurer if necessary to receive coverage. It was Kirkland who informed Johnson in September 2011 that he was being terminated.

Much of the information in Johnson's affidavit is corroborated by supporting evidence,[18] and PPI has done nothing to rebut or explain Johnson's contentions. There is thus evidence that PPI personnel directed and supervised Johnson, hired and fired him, and led him to believe that he was indeed a PPI employee (notwithstanding his contract with PSL). Looking at the "venture as a whole," *Cosmopolitan Shipping*, 337 U.S. at 795, the Court finds myriad factual issues concerning Johnson's

---

[18] R. Docs. 19-3, 19-4, 19-5, 19-6.

relationship with PPI that make summary judgment on this record unwarranted.

IV. **CONCLUSION**

For the foregoing reasons, defendant's motion is DENIED.

New Orleans, Louisiana, this 22nd day of May, 2012.

_____
SARAH S. VANCE

UNITED STATES DISTRICT JUDGE