UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHNSON                              CIVIL ACTION

VERSUS                               NO: 11-2773 C/W
                                     12-1523

PPI TECHNOLOGY SERVICES,             SECTION: "J" (3)
L.P. ET AL.

### ORDER AND REASONS

Before the Court are Defendants Transocean, Ltd. and
GlobalSantaFe Offshore Services's, **Reurged Motion to Dismiss for
Lack of Personal Jurisdiction (Rec. Doc. 64)**, Plaintiffs James
Johnson and Robert Croke's opposition thereto **(Rec. Doc. 94)**, and
Defendants' reply and supplemental reply to same **(Rec. Doc. 96,
171)**, and Plaintiffs' *surreply* **(Rec. Doc. 174)**. Also before the
Court are both parties' supplemental memoranda addressing
personal jurisdiction under Federal Rule of Civil Procedure
4(k)(2) **(Rec. Docs. 159, 160, 163)**. Defendants' motion was set
for hearing on October 10, 2012, on the briefs. Having considered
the motion and legal memoranda, the record, and the applicable
law, the Court finds that Defendants' motion should be **GRANTED in**

1

**part** and **DENIED in part** for the reasons set out more fully below.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

This action arises out of claims for maintenance and cure, unseaworthiness, and negligence brought under general maritime law. Plaintiff James Johnson ("Mr. Johnson") filed the instant suit on November 8, 2011, naming as Defendants AFREN, PLC ("AFREN"), PPI Technology, L.P. ("PPI"), PSL, Ltd. ("PSL"), and Transocean, Ltd. ("Transocean"). On March 27, 2012, Plaintiff filed his First Amended Complaint adding GlobalSantaFe Offshore Services ("GSF") as a Defendant. Mr. Johnson's case was consolidated with Robert Croke ("Mr. Croke")'s related case on June 20, 2012. Mr. Croke's case named AFREN, PPI, Transocean, GSF, and Transocean Offshore Deepwater Drilling, Inc. ("TODDI") as Defendants.

Plaintiffs' complaints assert that on November 8, 2010, they were working as seamen on the HIGH ISLAND VII, a mobile rig located approximately twelve miles off the Nigerian coast. Plaintiffs allege that at approximately 12:30 a.m. Nigerian gunmen boarded the rig and took them hostage. Mr. Johnson alleges that while he was being held hostage, the gunmen shot him in his right leg. He contends that after being shot he "remained on the

floor in the galley bleeding from the injury to his leg" for approximately three to three-and-a-half hours. No. 11-2773, Compl., Rec. Doc. 1, p. 5, ¶ 16. He reports that since the alleged incident, he has had to undergo multiple surgeries and continuing therapy on his leg and has been unable to return to work.

Similarly, Mr. Croke alleges that while being held hostage, he was slapped and beaten by the gunmen and, eventually, shot in the foot. Mr. Croke reports that the gunmen took him with them when they left the rig. He asserts that he was held hostage for ten days and tortured. He alleges that after he was rescued, he had two surgeries performed on his foot. He states that he continues to suffer mental and emotional damages as well as physical injury.

Plaintiffs' complaints assert that they have filed suit against the aforementioned Defendants, because (1) PPI and/or PSL employed them; (2) Transocean owned and operated the rig; (3) AFREN had contracted with Transocean to use the rig; and (4) GSF had employees on the rig who were responsible "for maintaining the [rig's] safety, security and protection." No. 11-2773, First Am. Compl., Rec. Doc. 28, p. 2, ¶ 2. Mr. Croke's complaint also independently asserts that TODDI had employees on board who were

responsible for ensuring the safety of the rig. Plaintiffs allege that, together, all of these entities knew or should have known that it was extremely likely that Nigerian gunmen would attack the rig, and they failed to properly secure the rig despite that knowledge.

Transocean and GSF filed the instant Motion to Dismiss on August 22, 2012. Defendants' motion reurges their claim that this Court lacks personal jurisdiction over them, which they first brought before the Court on February 10, 2012,  in a previous filing. At that time, this case was before Chief Judge Sarah Vance. Chief Judge Vance denied the earlier motion on May 21, 2012 in order to allow the Plaintiffs time to conduct limited jurisdictional discovery. Her order provided that Defendants could refile the motion after discovery had been completed. As noted, Defendants refiled their motion in August 2012, asserting that GSF had responded to written discovery, that Bradley McKenzie ("Mr. McKenzie"), the Rule 30(b)(6) representative of GSF, had been deposed, and that Plaintiffs had made no additional attempts at discovery. The hearing date for the motion was continued until October 10, 2012. Plaintiffs filed their opposition on October 10, 2012, with Defendants replying that day. Before Chief Judge Vance could rule on the motion, however,

the case was reassigned to this Section on November 8, 2012. On January 23, 2013, the Court ordered the parties to submit additional briefing on personal jurisdiction under Rule 4(k)(2). On February 4, 2013, Defendants submitted the required briefing to the Court. Plaintiffs submitted their memoranda to the Court on February 6, 2013, two days after the submission deadline. Defendants replied the same day.

## THE PARTIES' ARGUMENTS

Transocean and GSF argue that this Court does not have personal jurisdiction over them. With regard to specific jurisdiction, Transocean and GSF assert that they do not have sufficient minimum contacts in Louisiana and in connection with this incident because: (1) neither entity owned or operated the rig in question at the time of the incident; (2) even if they had owned/operated the rig, the incident itself did not take place in Louisiana and/or the Eastern District; (3) they, nor any other Transocean affiliate, employed and/or issued paychecks to the Plaintiffs in this case in connection with the incident in question; and (4) they further contend that even if they had employed the Plaintiffs, it would not matter because Plaintiffs

have no relation to Louisiana.[1]

Likewise, in reference to general jurisdiction, Defendants argue that neither entity has sufficient systematic and continuous contacts with Louisiana to give this Court personal jurisdiction over them. Specifically, with regard to GSF, Defendants assert that although GSF does issue payroll checks and W-2s to some residents of Louisiana who work for Transocean entities, it asserts that it did not issue any checks to Louisiana employees who worked on the rig in question. Furthermore, Defendants note that GSF only issues paychecks for work performed overseas, not work performed in Louisiana and/or the United States. Likewise, Defendants argue that the issuance of paychecks does not make GSF an employer of the individuals who reside in Louisiana, GSF maintains that it merely acts as a paymaster for Transocean entities. Accordingly, GSF contends that such activity is too sporadic to provide sufficient continuous contacts for the purposes of general jurisdiction. In reference to Transocean, Defendants note that Plaintiffs did not conduct any discovery with respect to Transocean, nor did they address the arguments made with respect to Transocean in its opposition.

_____

[1] Ultimately, however, both entities maintain that they did not have an employment relationship with Plaintiffs.

As such, Defendants contend that the Plaintiffs have not opposed its Transocean personal jurisdiction arguments and, therefore, Transocean should be dismissed. In support of their arguments, Defendants submit copies of the contracts governing the ownership and/or operation of the rig in question, the deposition of Mr. McKenzie, and GSF's written discovery responses.

In response, Plaintiffs argue that this Court has personal jurisdiction over GSF.[2] Plaintiffs make no arguments with regard to specific jurisdiction, but rather, direct their opposition at demonstrating to the Court that it (1) has general jurisdiction, (2) should apply Federal Rule of Civil Procedure 4(k)(2), or that (3) the Plaintiffs have made a prima facie case that GSF and TODDI are a single entity and should be treated as such for personal jurisdiction purposes. With regard to its general jurisdiction argument, Plaintiffs direct the Court's attention to five cases in which a court has either exercised personal jurisdiction over GSF in Texas, the Western District of Louisiana, or in which Louisiana courts were found to have personal jurisdiction over another Transocean entity. In

---

[2] Defendants are correct in their observation that at no point in Plaintiffs' opposition do they argue that the Court has personal jurisdiction over Transocean. In fact, the first sentence of Plaintiffs' opposition reads, "Plaintiffs James Johnson and Robert Croke oppose Defendant Global Santa Fe Offshore Services, Inc.'s (hereinafter 'GSF') motion to dismiss this matter." Pls.' Opp., Rec. Doc. 94, p. 1.

particular, Plaintiffs note that in these cases, GSF was willing to classify its relationship with the individuals that it issued paychecks to as one of "employer and employee," which Plaintiffs argue should indicate to the Court that GSF is not being forthcoming in the instant case. Likewise, Plaintiffs also argue that one of these cases, Anderson v. GlobalSantaFe Offshore Services et al., No. 11-812, which is currently pending before Chief Judge Vance, provides valuable insight into the employer-employee type relationship that GSF has with the individuals to whom it issues paychecks. Plaintiffs contend that the Anderson plaintiff's opposition memorandum and affidavit in that case demonstrate that: (1) GSF coordinates travel for the people to whom it issues paychecks; (2) those individuals may do some of their work from home in Louisiana, and (3) those individuals may attend on-line training at home. Plaintiffs assert that this indicates that GSF has sufficient minimum contacts with Louisiana for this Court to have general personal jurisdiction over it.

In the alternative, Plaintiffs argue that the Court should apply Rule 4(k)(2) to this case, conferring jurisdiction on GSF because (1) it is not subject to jurisdiction in any particular state's courts, and because (2) exercising jurisdiction would still be consistent with the constitution. Plaintiffs contend

that this is appropriate because it is clear that GSF has a relationship with the United States, and GSF has contested jurisdiction in the past in Texas, the most logical state to have personal jurisdiction over GSF since it runs its payroll operations there. Plaintiffs argue that because GSF employs at least 300 Americans, administers its payroll from an office in the United States, and holds itself out as being located in that same office, it has sufficient contacts with the United States to warrant conferring jurisdiction under Rule 4(k)(2). Additionally, Plaintiffs argue that because GSF has objected to jurisdiction in Texas in the past, as a matter of law this Court should find that GSF is not subject to personal jurisdiction in any state and, thus, apply Rule 4(k)(2).

Lastly, Plaintiffs assert that Mr. McKenzie's testimony establishes that TODDI is the real enterprise behind GSF. They contend that TODDI effectively runs GSF and, therefore, the two corporations should be treated as a single business entity for jurisdictional purposes. Plaintiffs contend that on at least two occasions TODDI has been subject to personal jurisdiction in Louisiana, and that the Court should consider that in determining its jurisdiction over GSF. In support of their arguments, Plaintiffs have provided the Court with (1) an affidavit from an

9

"employee" of GSF, (2) pleadings from the aforementioned cases, and (3) Mr. Bradley's deposition/written discovery from GSF.

In Defendants' reply, they reiterate that GSF is merely a paymaster, issuing payroll to Transocean employees and nothing more. In making this argument, Defendants emphasize that this Court has no specific jurisdiction because there is no connection between them, the incident in question, and Louisiana. Likewise, they reiterate that administering payroll is not sufficient to create systematic and continuous contacts with Louisiana. With regard to Plaintiffs' arguments about past cases in which the courts have exercised jurisdiction over GSF in Texas and Louisiana, and/or in which GSF opposed jurisdiction in Texas, Defendants assert that what may have been true in the past is not necessarily true today. In particular, Defendants contend that since those cases, they have undergone significant corporate changes and the same arguments made with reference to personal jurisdiction in Texas may not be applicable to them today. Defendants urge the Court to focus on the primary issue in this case — whether personal jurisdiction exists over them *today*. Likewise, they also note that in the cases in which Louisiana courts exercised jurisdiction over them, the incidents in question and/or plaintiffs in those cases had a connection to

Louisiana, and it was better for all parties for GSF to submit to the jurisdiction of Louisiana courts.

With regard to Plaintiffs' arguments about Rule 4(k)(2), Defendants assert that numerous corporate changes have taken place since the time in which it contested personal jurisdiction in Texas, thereby implying that Plaintiff has not made out a prima facie case to warrant applying Rule 4(k)(2). Likewise, Defendants argue that even if Plaintiff had made a sufficient case, it has not shown that GSF has sufficient minimum contacts with the United States to satisfy the rule's due process requirement. GSF again asserts that it is a paymaster entity only, and that as such it does not have sufficient minimum contacts with the United States. Thus, GSF argues that conferring jurisdiction through Rule 4(k)(2) would not comport with traditional notions of due process.

While both Plaintiffs and Defendants expand on their Rule 4(k)(2) arguments in their additional briefings, the Court will address those specific arguments individually as they apply to the Court's analysis below.

## DISCUSSION

The Fifth Circuit has stated the legal standard for a motion to dismiss for lack of personal jurisdiction:

11

Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. <u>Wyatt v. Kaplan</u>, 686 F.2d 276, 280 (5th Cir.1982). The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a prima facie showing suffices. <u>Id.</u> This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction. <u>Id.</u>

The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction in personam of a non-resident defendant unless the defendant has meaningful "contacts, ties, or relations" with the forum state. <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Jurisdiction may be general or specific. Where a defendant has "continuous and systematic general business contacts" with the forum state, <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984),

the court may exercise "general" jurisdiction over any action brought against that defendant. Id. at 414, 104 S.Ct. 1868 n. 9. Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." Id. at 414, 104 S.Ct. 1868 n. 8. . . .

A federal court may satisfy the constitutional requirements for specific jurisdiction by a showing that the defendant has "minimum contacts" with the forum state such that imposing a judgment would not "offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316, 66 S.Ct. 154. In Nuovo Pignone v. STORMAN ASIA M/V, 310 F.3d 374 (5th Cir. 2002), we consolidated the personal jurisdiction inquiry into a convenient three-step analysis: "(1) whether the defendant ... purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results

from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." Id. at 378 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The forum state may create, and this court would be bound to apply, additional jurisdictional restrictions by statute, Adams, 220 F.3d at 667, but Louisiana's "long-arm" statute extends jurisdiction to the constitutional limit, La. R.S. 13:3201(B), so the two inquiries in this case fold into one.

Luv N' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006) (footnotes omitted).

As an initial matter, the Court notes that the Plaintiffs have not produced any information or made any argument which supports the proposition that this Court has personal jurisdiction over Transocean. As such, there is no evidence in front of the Court upon which it can make a finding that it does indeed have jurisdiction over Transocean. Therefore, because the Plaintiffs have failed to meet their burden of proof, the Court

finds that it does not have personal jurisdiction over Transocean in the instant case; therefore, Transocean will be dismissed from this suit.

Next, the Court addresses the question of whether it has personal jurisdiction over GSF. Plaintiffs have proffered three arguments in support of jurisdiction: (1) that there is general jurisdiction over GSF, (2) that there is jurisdiction over GSF under Rule 4(k)(2), and (3) that GSF and TODDI are a single entity.[3] The Court addresses each of these arguments in turn.

## A.   General Jurisdiction

In order for a court to exercise general jurisdiction over a defendant, the defendant must have "continuous and systematic general business contacts" with the forum state. Helicopteros, 466 U.S. at 415. "Contacts between a defendant and the forum state must be 'extensive' to satisfy the "systematic and continuous" test." DNH, LLC v. In-N-Out Burgers, 381 Fed. Supp. 559, 563 (E.D. La. 2005) (citing Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V., 249 F.3d 413, 419 (5th Cir.

---

[3] The Court notes that Plaintiffs have not asserted that specific jurisdiction is applicable to this case. However, even if Plaintiffs had made such an assertion, the evidence before the Court shows that there is no connection between GSF's contacts with the forum, namely the sending of paychecks and/or direct deposit of salaries, and the incident at issue in this case. Specifically, there is no evidence that the Louisiana employees that GSF pays were on the rig in question. Therefore, Plaintiffs' cause of action could in no way "arise out of or result from" the connection that GSF has to the forum state.

2001)). The continuous and systematic test for establishing personal jurisdiction is a difficult test to meet. <u>Submersible Systems, Inc.</u>, 249 F.3d at 419. In fact, "the Supreme Court has upheld an exercise of personal jurisdiction when the suit was unrelated to the defendant's contacts with a forum only once." <u>Id.</u>

Plaintiffs assert that GSF has the following contacts with Louisiana: (1) it employs forty Louisiana residents to work overseas; (2) it transfers money into Louisiana bank accounts and/or sends Louisiana employees' pay checks and W-2's to Louisiana; and (3) at least one of the Louisiana residents GSF employs attends training in Louisiana, accesses the company intranet in Louisiana, and communicates with his jobsite from Louisiana.[4] The Court finds that these contacts are not sufficient to establish that GSF has "continuous and systematic" contacts with Louisiana. In making this determination, the Court looks to <u>Helicopteros</u>, the United States Supreme Court case which set up the framework for analyzing general jurisdiction.

In <u>Helicopteros</u>, the Supreme Court held that a Colombian corporation's contacts with Texas were insufficient to establish general jurisdiction. 466 U.S. at 416. In that case, the

---

[4] <u>See</u> Pls.' Opp., Rec. Doc. 94, p. 11; Pls.' Ex. 1, Rec. Doc. 94-1, p. 1-2.

corporation's contacts consisted of sending an executive to Houston to engage in contract negotiations, accepting checks that were drawn on a Houston bank, purchasing equipment and services for a Texas corporation, and sending personnel to train in Texas. Id. Of particular importance to the instant case, the Court explained that accepting checks that were drawn from a Texas bank were not sufficient to constitute "continuous and systematic" activity because there was no indication that the company had requested that the checks be drawn on Texas banks, or that the company had negotiated the identity or location of the banks from which the checks would be drawn. Id. The Court noted that "[s]uch unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum state." Id. at 417. It deemed this information to be "of negligible significance." Id. at 416.

Applying that same reasoning to the instant case, it would seem that the fact that GSF sends checks and W2's to employees[5] in Louisiana is also of negligible significance. The evidence in this case shows that all of the GSF employees perform the

---

[5] For the purposes of this motion the Court assumes that the forty Louisiana individuals in question are employees of GSF, despite GSF's assertions to the contrary. When determining personal jurisdiction, all contested facts are weighed in favor of jurisdiction. Luv N' Care, Ltd., 438 F.3d at 469.

17

majority of their work overseas and only receive their paycheck and/or direct deposit in Louisiana because they, not GSF, have elected that the company send it there. Such an election is one over which GSF has little control and, in many ways, is a unilateral decision on the part of those employees, much like the unilateral decision of the drawers in Helicopteros.

To the extent that Plaintiffs present Mr. Anderson's affidavit (the plaintiff in Case No. 11-812, pending before Chief Judge Vance) as evidence that GSF does more than just send checks and/or direct deposits to its employees, the Court notes that Mr. Anderson can only attest to his own employment by GSF. He cannot attest to the employment activities, requirements, or relationship of GSF with the thirty-nine other individuals who are Louisiana residents. Moreover, Mr. Anderson's affidavit does not indicate that it was actually GSF that required him to complete additional training or conduct additional employment activities in the state.[6] His affidavit merely states that he "received all [his] payments from GSF." Pls.'s Ex. 1, Rec. Doc. 94-1, p. 2. Therefore, the Court looks to Mr. McKenzie's deposition (GSF's Rule 30(b)(6) deponent) in order to understand

---

[6] In particular, when referencing how he accessed information associated with his employment, Mr. Anderson states that he "routinely accessed the 'Transocean' hub website," not a GSF specific website. Pls.'s Ex. 1, Rec. Doc. 94-1, p. 2.

GSF's relationship with all of its employees.[7]

Mr. McKenzie's deposition states that the only activities that GSF performs are the mailing of pay checks and W-2's. Likewise, neither Mr. McKenzie's deposition nor Mr. Anderson's affidavit indicate that GSF did things such as interview these forty employees in Louisiana, recruit individuals specifically from Louisiana, or engaged in any additional activity to purposefully avail itself of Louisiana law. Indeed, in support of their position Plaintiffs have directed the Court to evaluate Mr. Anderson's opposition to a motion to dismiss for lack of personal jurisdiction in his own separate case, <u>Anderson v. GSF et al.</u>, No. 11-812. Upon examination, the Court notes that Mr. Anderson's opposition specifically states that "[t]hroughout the 2000's he received his w-2 forms each year from [TODDI]. Then in 2009, presumably due to the merger of Transocean with Global Santa Fe Corporation in 2007, [he] began to receive his W-2 forms from [GSF]." <u>Anderson v. GSF et al.</u>, No. 11-812, Rec. Doc. 77, p. 1; <u>see also</u> Pls.' Opp, Rec. Doc. 94, p. 4 (explaining that after the merger of GSF and Transocean some of the Louisiana employees,

---

[7] The Court also takes notice of Chief Judge Vance's recent Order and Reasons issued in Mr. Anderson's case, in which she found that Plaintiff had failed to establish a *prima facie* case that GSF's contacts with Louisiana justify the exercise of general jurisdiction over GSF. <u>Anderson v. GlobalSantaFe Offshore Services, Inc.</u>, No. 11-812, February 15, 2013 Order and Reasons, Rec. Doc. 110, p. 11.

including Mr. Anderson, "were simply moved from one corporate entity to another"). These statements only further indicate that GSF took no affirmative action to avail itself of Louisiana law. Accordingly, even accounting for Mr. Anderson's testimony, the Court cannot find that GSF's contacts with Louisiana are continuous and systematic, such that it can fairly be brought into court in this state without some additional showing of a specific connection between those contacts and the litigation in question.[8]

**B.   Rule 4(k)(2)**

In the alternative, Plaintiff argues that this Court may exercise jurisdiction under Rule 4(k)(2). Rule 4(k)(2) provides that,

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

---

[8] The Court notes that in making its determination, it has also considered all of the cases that the Plaintiffs have argued support conferring jurisdiction in this case. The Court finds that all of these cases are distinguishable from the instant case. In particular, in the majority of the cases cited by the Plaintiffs, the court actually found that it had personal jurisdiction based on a *specific* jurisdiction analysis, not a *general* jurisdiction analysis. As such, these cases are not applicable to the instant case.

20

(A) the defendant is not subject to jurisdiction in any

state's courts of general jurisdiction; and

(B) exercising jurisdiction is consistent with the

United States Constitution and

laws.


Federal Rule of Civil Procedure 4(k)(2) (2012).


In the Fifth Circuit, claims falling under the federal courts' admiralty jurisdiction are considered to be claims arising under federal law for the purposes of Rule 4(k)(2). World Tanker Carriers Corp. v. M/V Ya Mawlaya, 99 F.3d 717, 723 (5th Cir. 1996). In order to show that Rule 4(k)(2) applies the plaintiff must demonstrate that (1) the defendant in question is not subject to the general jurisdiction of any other state, and (2) that exercising jurisdiction is consistent with the due process clause of the Fifth Amendment, meaning that the defendant has sufficient minimum contacts with the United States as a whole. Adams v. Unione Mediterranea Di Sicurta, 364 F.3d 646, 651 (5th Cir. 2004). The Fifth Circuit has stated "that a piecemeal analysis of the existence *vel non* of jurisdiction in all fifty states is not necessary" to prove part one of the test. Id.

Rather, the court may confer jurisdiction where the "defendant does not concede to jurisdiction in another state." Id.

In forming this rule, the Fifth Circuit adopted the burden-shifting framework adopted by the United States Court of Appeals for the Seventh Circuit.[9] Under this framework, the Plaintiff must make a prima facie case that the rule applies by "showing (1) that the claim asserted arises under federal law, (2) that personal jurisdiction is not available under any situation-specific federal statute, and (3) that the putative defendant's contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements." Swiss American Bank, Ltd., 191 F.3d at 41. Additionally, the plaintiff "must certify that, based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state." Id. Once

_____

[9] In the Fifth Circuit case outlining Rule 4(k)(2), the court states that it agrees with the Seventh Circuit when deciding that a plaintiff should not have to engage in an analysis of "the existence of vel non of jurisdiction in all fifty states." Adams, 364 F.3d at 651. In making that statement, the court cites to the Seventh Circuit case, ISI Int'l., Inc. v. Borden Ladner Gervais LLP, 256 F.3d 548 (7th Cir. 2001). A reading of the Seventh Circuit case indicates that the Seventh Circuit based its analysis of the rule on the framework initially promulgated by the United States Court of Appeals for the First Circuit in U.S. v. Swiss American Bank, Ltd., 191 F.3d 30 (1st Cir. 1999). Because Fifth Circuit cases do not discuss what burden, if any, the Plaintiff has in asserting Rule 4(k)(2), this Court looks to the framework outlined by the First Circuit and, eventually, adopted by the Fifth Circuit in order to determine whether or not the Plaintiffs in this case have adequately asserted Rule 4(k)(2), such that the Defendants should be forced to concede jurisdiction in a given state.

plaintiff has made a prima facie case, then the burden shifts to the defendant to produce evidence that demonstrates that it is subject to jurisdiction in another state and/or that it has insufficient contacts with the United States as a whole. Id.

In the instant case, Plaintiffs argue that this case is an admiralty case and, therefore, Rule 4(k)(2) applies. Likewise, in arguing that general jurisdiction does not exist in any other state, Plaintiffs contend that because GSF contested personal jurisdiction in Texas a 2006 case, Devon Energy Prod. Co., LP v. GlobalSantaFe South America, LLC, No. 06-2992, and because Texas is the state where GSF is most likely to be subject to general jurisdiction as it has an office there, the Court should find that GSF is not subject to the general jurisdiction of any state. Likewise, in their supplemental briefing, Plaintiffs note that in the more recent Anderson case, during oral argument counsel for GSF refused to admit that Texas would be a proper venue for suit when that question was specifically posed to counsel.[10]

---

[10] The Court is cognizant that the question of venue is distinct from the question of personal jurisdiction, that being said, the Court does find it persuasive that in yet another recent case GSF has again refused to offer a place where it can properly be sued. As Plaintiffs deftly point out, "Rule 4(k)(2) is meant to avoid exactly such jurisdiction wavering. If a defendant which conducts substantial activities in the United States will not establish a proper jurisdiction, Rule 4(k)(2) allows this Court to do so." Pls.' Supp. Mem., Rec. Doc. 160, p. 4. The Court also notes that it is aware that the question of Rule 4(k)(2) jurisdiction was raised in Mr. Anderson's own case; however, in that case, GSF had not been served and, therefore, Chief Judge Vance did not address Rule 4(k)(2). Anderson v. GlobalSantaFe Offshore Services, Inc., No. 11-812,

In response, GSF has asserted that while it may have contested jurisdiction in the past, such arguments may not be available to it today, thereby implying that it *could* be subject to personal jurisdiction in Texas. Nevertheless, in both GSF's reply as well as the additional briefing requested by the Court, the Defendant has refused to concede that it would be subject to personal jurisdiction in Texas or any other state. In fact, in its supplemental memorandum GSF goes so far as to state that, "GSF certainly denies that it is subject to the jurisdiction of this state, but that does not mean that GSF, in order to contest personal jurisdiction here, must stipulate to jurisdiction in some other forum." Defs.' Suppl. Mem., Rec. Doc. 157-2, pp. 4-5. Unfortunately for GSF, that is exactly what the Fifth Circuit has stated that Rule 4(k)(2) requires it to do. See Adams, 364 F.3d at 651 (quoting ISI, Int'l, Inc., 256 F.3d at 552 ("If . . . a defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, the federal court is entitled to use Rule 4(k)(2).")). Moreover, this Court has given Defendants ample opportunity to make such an assertion

---

February 15, 2013 Order and Reasons, Rec. Doc. 110, pp. 16-17. As such, the Court finds that the order in the Anderson case does little to change this Court's findings with regard to Rule 4(k)(2).

and, yet, Defendants have refused to do so.[11] While it may be true that things are different today than they were in 2006, the Court finds that Plaintiff has presented sufficient evidence to the Court to shift the burden to GSF and, therefore, that it is GSF's responsibility to prove that things are indeed different by conceding jurisdiction in some other U.S. forum.

The Court relies on the Fifth Circuit's decision in <u>Adams</u> in making this determination. In <u>Adams</u>, the court found that the plaintiff had made a prima facie case where: (1) the defendant had contested transfer to New York, a jurisdiction where plaintiff believed personal jurisdiction existed; (2) the defendant generally challenged contacts with the U.S. as a whole; and (3) the defendant had not offered any other venue where personal jurisdiction might be conferred. <u>Adams</u>, 364 F.3d at 651. As the Court has noted, Plaintiffs have shown that GSF has contested jurisdiction in Texas, a jurisdiction where Plaintiffs believe personal jurisdiction should exist. Likewise, throughout

---

[11] Not only has GSF refused to do so, but it has argued to the Court that it is not required to do so. The Court notes that the argument made by GSF is not only incorrect, but it is patently false. It appears to the Court that GSF's counsel either purposefully neglected to present the Court with easily accessible and clearly established Fifth Circuit law on this matter, or that GSF's counsel should be required to take a refresher course on researching case law. In either event, the Court notes that GSF's counsel should count itself lucky not to be ordered to show cause as to why the Court should not sanction it for presenting claims and defenses to the Court that are not warranted under existing law.

Defendants' supplemental memorandum they challenge GSF's contacts with the United States as a whole.[12] Furthermore, despite opportunities in both this and other cases, GSF has not conceded that personal jurisdiction may be conferred in any other U.S. forum.[13] Thus, the Court finds that Plaintiffs' have presented a prima facie case for the application of Rule 4(k)(2).

Accordingly, the Court now examines GSF's contacts with the United States as a whole in order to determine whether it is appropriate to exercise jurisdiction. In understanding GSF's contacts, the Court looks primarily to Mr. McKenzie's 30(b)(6) deposition. In his deposition, Mr. McKenzie explains that GSF's primary purpose is to manage the payroll for TODDI's "ex-pat population." Defs.' Ex. E, Rec. Doc. 64-7, p. 3. Specifically, GSF issues paychecks, direct deposit, and W-2's to U.S. nationals who work abroad. Defs.' Ex. E, Rec. Doc. 64-7, p. 3-4.

---

[12] Defendants' argue that all of GSF's operations are conducted in the Cayman Islands and that their role as paymaster to individuals living in the United States is not sufficient to warrant the application of general jurisdiction in the United States. Defs.' Suppl. Mem., Rec. Doc. 157-2, p. 4.

[13] In Defendants' Supplemental Reply, they argue that "Plaintiff's counsel, in the Anderson matter, in the Pre-Trial Order in that case specifically conceded . . . with respect to GSF, that ' . . . in all likelihood jurisdiction would be found in Texas.'" Defs.' Supp. Reply, Rec. Doc. 171-2, p. 3. The Court reiterates to the Defendants that in a Rule 4(k)(2) situation the Court is entitled to apply the rule where "*defendant* does not concede to jurisdiction in another state." *Adams*, 364 F.3d at 651. Therefore, it is of little consequence to this Court's decision what plaintiff's counsel in a separate case argues and/or may concede. Rather, it only matters what GSF has conceded in this case, and a review of the pleadings reveals that GSF has not conceded that it is subject to jurisdiction anywhere within the United States.

Mr. McKenzie reiterates throughout his deposition that GSF does not issue payroll for citizens of other countries working abroad, but rather, focuses solely on U.S. citizens — approximately 300. Defs.' Ex. E, Rec. Doc. 64-7, p. 3-5. Furthermore, when asked where GSF's W-2's are processed, Mr. McKenzie stated that, "[w]e have a department, a payroll department here in Houston that processes the payroll information for these employees and which is ultimately derived back to the W-2." Defs.' Ex. E, Rec. Doc. 64-7, p. 4. Likewise, Mr. McKenzie explained that actual review of payroll for GSF happens in Houston, and all of his own work for GSF has occurred in Houston.[14] Moreover, Mr. McKenzie explained that the current controller of the payroll operation, the person who has the authority to sign paychecks or payroll direct deposits for GSF, is currently located in Houston. Defs.' Ex. E, Rec. Doc. 64-7, p. 7. Thus, Mr. McKenzie's deposition establishes that GSF runs its payroll operations in an office in Houston, that GSF only issues payroll to United States citizens

---

[14] Defs.' Ex. E, Rec. Doc. 64-7, pp. 4-7. It should be noted that Mr. McKenzie's deposition also indicates that the individuals performing the payroll work for GSF in Houston actually receive their own paychecks from TODDI. While the Court certainly takes this into consideration in making its analysis, it does not find such information dispositive. In particular, the Court notes that if GSF can argue that it is not an employer but merely a paymaster, there is no reason that its functional employees in Houston, the individuals who actually process its payroll, cannot be paid from another source, or rather, a paymaster, themselves.

(indeed, it specifically targets U.S. citizens who work abroad), and that GSF currently issues payroll to 300 U.S. citizens. In addition to Mr. McKenzie's deposition, Plaintiff has also submitted information which demonstrates that on GSF's W-2 forms and pay stubs, the return office address is listed as a 4 Greenway Plaza, Houston, Texas.[15] On whole, the Court finds that this information demonstrates that GSF has general jurisdiction with the United States.

While the Court admits that the question of general jurisdiction is a close call in this case, it finds that GSF cannot have it both ways. GSF cannot effectively run its payroll operations out of Houston, hold itself out to the recipients of its paychecks as having an office in Houston, and only employ United States citizens who work abroad, while at the same time avoiding being brought into court in the United States. In making this determination, the Court looks at the purpose of Rule 4(k)(2) jurisdiction. The Fifth Circuit has explained that Rule 4(k)(2) "was enacted to fill an important gap in the jurisdiction of federal courts in cases arising under federal law." Adams, 364 F.3d at 651. "'While a defendant may have sufficient contacts

---

[15] Pls.' Ex. 1, Rec. Doc. 94-1, p. 78 (depicting a W-2 wage and tax statement which states that the employer's name, address, and zip code are "GlobalSantaFe Offshore Service, 4 Greenway Plaza, Houston, TX 7704").

with the United States as a whole to satisfy due process concerns, if she had insufficient contacts with any single state, she would not be amenable to service by a federal court sitting in that state . . . .'" Id. (quoting World Tanker Carriers Corp. v. MV Ya Mawlaya, 99 F.3d 717, 721-22 (5th Cir.1996)). Thus, "'Rule 4(k)(2) was adopted in response to this problem of a gap in the courts' jurisdiction . . . .'" Id. GSF's corporate operations clearly speak to this gap, and this Court finds that this is exactly the type of situation for which the rule was designed. Accordingly, the Court finds that by virtue of Rule 4(k)(2) it has personal jurisdiction over GSF in the instant matter.

Given this conclusion, the Court need not analyze Plaintiffs' assertions that jurisdiction also lies under a single-entity theory. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **GRANTED** as to Transocean, Ltd. and **DENIED** as to GlobalSantaFe Offshore Services.

**IT IS FURTHER ORDERED** that Transocean, Ltd. is **DISMISSED without prejudice.**

New Orleans, Louisiana this 21st day of February, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE