UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


JOHNSON                                   CIVIL ACTION

VERSUS                                    NO: 11-2773 C/W
                                          12-1534

PPI TECHNOLOGY SERVICES,                  SECTION: "J" (1)
L.P. ET AL.

                         **ORDER AND REASONS**

   Before the Court are Defendant PSL, Ltd. ("PSL")'s **Motion to Dismiss for Lack of Personal Jurisdiction (Rec. Doc. 178)**, Plaintiffs James Johnson and Robert Croke's opposition thereto **(Rec. Doc. 187)**, and Defendant's reply to same **(Rec. Doc. 210)**. PSL's motion was set for hearing on May 8, 2013, on the briefs. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that Defendant's motion should be **GRANTED** for the reasons set forth more fully below.

                **PROCEDURAL HISTORY AND BACKGROUND FACTS**

   This action arises out of claims for maintenance and cure, unseaworthiness, and negligence brought under general maritime law. Plaintiff James Johnson ("Mr. Johnson") filed the instant

                                    1

suit on November 8, 2011, naming as Defendants AFREN, PLC ("AFREN"), PPI Technology, L.P. ("PPI"), PSL, and Transocean, Ltd. ("Transocean"). On March 27, 2012, Plaintiff filed his First Amended Complaint adding GlobalSantaFe Offshore Services ("GSF") as a Defendant. Mr. Johnson's case was consolidated with Robert Croke ("Mr. Croke")'s related case on June 20, 2012. Mr. Croke's case named AFREN, PPI, Transocean, GSF, and Transocean Offshore Deepwater Drilling, Inc. ("TODDI") as Defendants.

Plaintiffs' complaints assert that on November 8, 2010, they were working as seamen on the HIGH ISLAND VII, a mobile rig located approximately twelve miles off of the Nigerian coast. Plaintiffs allege that at approximately 12:30 a.m., Nigerian gunmen boarded the rig and took them hostage. Mr. Johnson alleges that while he was being held hostage, the gunmen shot him in his right leg. He contends that after being shot he "remained on the floor in the galley bleeding from the injury to his leg" for approximately three to three-and-a-half hours. No. 11-2773, Compl., Rec. Doc. 1, p. 5, ¶ 16. He reports that since the alleged incident, he has had to undergo multiple surgeries and continuing therapy on his leg and has been unable to return to work.

Similarly, Mr. Croke alleges that while being held hostage,

he was slapped and beaten by the gunmen and, eventually, shot in the foot. Mr. Croke reports that the gunmen took him with them when they left the rig. He asserts that he was held hostage for ten days and tortured. He alleges that after he was rescued, he had two surgeries performed on his foot. He states that he continues to suffer mental and emotional damages as well as physical injury.

Plaintiffs' complaints assert that they have filed suit against the aforementioned Defendants, because (1) PPI and/or PSL employed them; (2) Transocean owned and operated the rig; (3) AFREN had contracted with Transocean to use the rig; and (4) GSF had employees on the rig who were responsible "for maintaining the [rig's] safety, security and protection." No. 11-2773, First Am. Compl., Rec. Doc. 28, p. 2, ¶ 2. Mr. Croke's Complaint also independently asserts that TODDI had employees on board who were responsible for ensuring the safety of the rig. Plaintiffs allege that, together, all of these entities knew or should have known that it was extremely likely that Nigerian gunmen would attack the rig, and failed to properly secure the rig despite that knowledge.

PSL filed the instant Motion to Dismiss on February 25, 2013. PSL's motion reurges their claim that this Court lacks

personal jurisdiction over them, which they first brought before the Court on September 25, 2012, in a previous filing. At that time, this case was before Chief Judge Sarah Vance. Chief Judge Vance denied the earlier motion on October 17, 2012, in order to allow the Plaintiffs time to conduct limited jurisdictional discovery. Her order provided that PSL could refile the motion after discovery had been completed. As noted, PSL refiled its motion in February 2013, asserting that the parties had exchanged written discovery, that Plaintiffs had conducted the depositions of three current and one former PPI employees, and that Plaintiffs had declined to take the deposition of any PSL employee or representative.[1] The Court set the hearing date for PSL's on May 8, 2013. Plaintiffs filed their opposition on April 2, 2013, with PSL replying on May 8, 2013.

## THE PARTIES' ARGUMENTS

PSL argues that this Court does not have personal jurisdiction over it because PSL does not have sufficient minimum contacts with Louisiana. In Plaintiffs' opposition, Plaintiffs concede that PSL has no contacts with Louisiana; however, they argue that the Court has personal jurisdiction over PSL via the

---

[1] In any event, Judge Vance's order allowed for 45 days for the parties to conduct jurisdictional discovery. That 45 day period expired in December 2012 well before the instant motion was filed.

single business enterprise theory or under Federal Rule of Civil Procedure 4(k)(2). Accordingly, the Court will focus only on these two arguments.

Plaintiffs assert that this Court has jurisdiction over PSL under the alter ego or single business enterprise theory. Specifically, Plaintiffs contend that PSL operates entirely through PPI. Plaintiffs argue that because PSL and PPI are essentially one and the same, this Court is entitled to impute PPI's contacts in Louisiana onto PSL. Plaintiffs cite to the following as facts indicating that PPI and PSL are a single business entity: (1) one of PPI's employees, Sandra Birkline ("Ms. Birkline"), spends approximately 80% of her time reconciling PSL's bank statements and managing PSL's operating functions including drafting wire transfer paperwork, QuickBooks reconciliation, and coordinating contractor's contracts/invoices; (2) Ms. Birkline performs these duties out of the PPI office in Houston, Texas; (3) PSL maintains a low balance in its bank account and, therefore, does not capitalize itself to any extent; and (4) PSL does not comply with corporate formalities because its employees are paid from an account in the name of Petroleum Service Ltd., with all transfers being arranged by Ms. Birkline. Plaintiffs also note that for many years PSL maintained a bank

account in Houston. Plaintiffs point to Ms. Birkline's deposition testimony as evidence of the aforementioned facts.

In addition, Plaintiffs argue that this Court also has jurisdiction under Rule 4(k)(2). Plaintiffs contend that PSL conducts extensive activities in Houston, Texas (such as hiring Plaintiff and Ms. Birkline's aforementioned work). Likewise, Plaintiffs note that PPI's principals previously named PSL as an insured on one of its insurance policies, listing PSL's address as Houston, Texas. Thus, Plaintiffs argue that this indicates that PSL has sufficient contacts with the United States as a whole and, because PSL has not consented to jurisdiction within the United States, the Court may assert jurisdiction over PSL under Rule 4(k)(2).

In response, PSL contends that this Court does not have personal jurisdiction over it under either of Plaintiffs' theories. With regard to the single business entity theory, PSL contends that the evidence presented by Plaintiffs is not sufficient to create a prima facie case of jurisdiction. Specifically, PSL notes that Plaintiff has not presented the Court with the depositions of any of PSL's representatives. PSL introduces the sworn affidavit of Joy Vernon-Godfrey ("Ms. Vernon-Godfrey"), an officer of PSL's sole corporate director.

Ms. Vernon-Godfrey's affidavit explains that (1) PSL maintains its sole offices in Belize; (2) that it complies with Belizean capitalization requirements; (3) that it does not have common offices or unified control with PPI; (4) that it complies with all corporate formalities under Belizean law; (5) that there have never been undocumented transfers of funds between PSL and PPI; (6) that PSL maintains separate books from PPI; and (7) that there are no combined tax identification numbers or shareholder meetings. Thus, PSL contends that it is not an alter ego of PPI, and that PPI's contacts should not be imputed to it.

With regard to Rule 4(k)(2), PSL argues that the contacts listed by Plaintiffs are not sufficient to show general jurisdiction with the entire United States. In particular, PSL distinguishes itself from its co-defendant GSF, over which this Court previously found that Rule 4(k)(2) jurisdiction was proper, by noting that unlike GSF, PSL has no payroll department located in the United States and it does not list a United States' address on its W-2 forms and pay stubs.

### DISCUSSION

**A.   General Legal Standard**

The Fifth Circuit has stated the legal standard for a motion to dismiss for lack of personal jurisdiction:

7

Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. Wyatt v. Kaplan, 686 F.2d 276, 280 (5th Cir.1982). The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a prima facie showing suffices. Id. This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction. Id.

The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction in personam of a non-resident defendant unless the defendant has meaningful "contacts, ties, or relations" with the forum state. Int'l Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Jurisdiction may be general or specific. Where a defendant has "continuous and systematic general business contacts" with the forum state, Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984),

the court may exercise "general" jurisdiction over any action brought against that defendant. Id. at 414, 104 S.Ct. 1868 n. 9. Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." Id. at 414, 104 S.Ct. 1868 n. 8. This case presents only the question of specific jurisdiction.

A federal court may satisfy the constitutional requirements for specific jurisdiction by a showing that the defendant has "minimum contacts" with the forum state such that imposing a judgment would not "offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316, 66 S.Ct. 154. In Nuovo Pignone v. STORMAN ASIA M/V, 310 F.3d 374 (5th Cir.2002), we consolidated the personal jurisdiction inquiry into a convenient three-step analysis: "(1) whether the defendant ... purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the

plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." Id. at 378 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The forum state may create, and this court would be bound to apply, additional jurisdictional restrictions by statute, Adams, 220 F.3d at 667, but Louisiana's "long-arm" statute extends jurisdiction to the constitutional limit, La. R.S. 13:3201(B), so the two inquiries in this case fold into one.

Luv N' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006) (footnotes omitted).

**B.  Alter Ego or Single Business Enterprise**

In the instant case, Plaintiffs do not contest PSL's argument that this Court lacks personal jurisdiction over PSL under the traditional minimum contacts test. Rather, Plaintiffs contend that personal jurisdiction exists over PSL because it is an alter ego of PPI and, therefore, PPI's contacts with Louisiana

can be imputed to PSL to satisfy personal jurisdiction.[2] The Fifth Circuit has explained that, "'[a] court which has jurisdiction over a corporation has jurisdiction over its alter egos.'" Jackson v. Tanfoglio Giuseppe, S.R.L., 615 F.3d 579, 586 (5th Cir. 2010) (quoting Minn. Mining & Mfg. Co. v. Eco Chem, Inc., 757 F.2d 1256, 1265 (5th Cir. 1985)). "'The theory . . . is that, because two corporations (or the corporation and its individual alter ego) are the same entity, the jurisdictional contacts of one are the jurisdictional contacts of the other for the purposes of the . . . due process analysis.'" Id. (quoting Patin v. Thoroughbred Power Boats, Inc., 294 F.3d 640, 652 (5th Cir. 2002)). In determining whether an entity is an alter ego or a single business enterprise, courts are instructed to look at the following factors:

[1] common ownership, directors and officers, employees, and offices;

[2] unified control;

[3] inadequate capitalization;

---

[2] PSL does not argue that PPI does not have sufficient minimum contacts with Louisiana. PPI is authorized to do business in Louisiana and is a registered corporate entity within the state. Pls.' Ex. 11 to Opposition, Rec. Doc. 187-11, p. 1. PPI also has physical office locations in West Monroe, Baton Rouge, and Lafayette. Pls.' Ex. 11 to Opposition, Rec. Doc. 187-11, pp. 1-7. Thus, if PSL was an alter ego of PPI, then the Court could exercise jurisdiction over it.

[4] non-compliance with corporate formalities;

[5] centralized accounting;

[6] unclear allocation of profits and losses between corporations;

[7] one corporation paying the salaries, expenses, or losses of another corporation;

[8] and undocumented transfers of funds between entities.

Id. (citing Hollowell v. Orleans Reg'l Hosp. LLC, 217 F.3d 379, 385-89 (5th Cir. 2000)).

Plaintiffs argue that under each of these factors it is clear that PSL is merely an alter ego of PPI. The Court is not convinced. For example, the only evidence in the record that speaks to factors two, three, six, and eight is Ms. Vernon-Godfrey's affidavit. Her affidavit notes that (1) PSL and PPI do not share unified control; (2) PSL has always complied with the capitalization requirements imposed by Belizean law;[3] (3) there

---

[3] The Court acknowledges that Ms. Birkline has testified that PSL maintains a low account balance on the bank account that it uses to pay contractors. Pls.' Ex. 10 to Opp., Rec. Doc. 187-10, p. 8 ("Q. At the end of the year, is there ever a balance in the PSL account. A. No. Q. So y'all maintain a zero balance on that account essentially? A. Essentially, yes."). However, unlike the Plaintiffs, the Court does not find that to be a conclusive statement as to the capitalization of the company, which would likely involve information about the value of the company's stock, total liabilities, etc. All Ms. Birkline's testimony shows the

is no unclear allocation of profits and losses between PSL and PPI; and (4) there are no undocumented transfers of funds between PSL and PPI. Def.' Ex. A to Reply, Rec. Doc. 210-1, pp. 1-2. Likewise, Ms. Birkline's testimony indicates that the only funds transferred between the companies are done so through billing statements and invoices. Pls. Ex. 10 to Opp., Rec. Doc. 187-10, p. 4 ("Q. What are the sources of funding into the PSL account . . . ? A. Petroleum Services, Ltd. funds money . . . [a]nd [PPI] funds money. Q. Okay. Tell me about the [PPI] money. A. They pay invoices. . . . PSL has consulting services that they bill to [PPI]."). Not only does this testimony further demonstrate that the fund transfers are documented, but it also supports Ms. Vernon-Godfrey's statement that PSL complies with corporate formalities and indicates that there is at least some degree of separation between these two entities.[4] See Dalton v. R&W Marine, Inc., 897 F.2d 1359, 1363 (5th Cir. 1990) (finding that even where one entity owned 100% of its subsidiaries, was responsible

---

Court is that PSL maintains a minimal amount of cash on hand in the referenced account.

[4] Def.'s Ex. A to Reply, Rec. Doc. 210-1, p. 2 ("PSL fully complies with and has always fully complied with all corporate formalities required under Belizean law, including the requirements to maintain a corporate office, address, and registered agent in Belize, to keep a list of all shareholders, directors, and mortgage holders of PSL at its registered office in Belize, to file registered returns and to pay a annual license fees [sic] to the Companies Registry of the Government of Belize.").

for corporate policy, funneled revenues into centralized accounts, and filed consolidated tax returns it was still not an alter ego because these factors were outweighed by the companies' "modest" observation of corporate formalities). To the extent that Plaintiffs have demonstrated that there is clear overlap between the two entities—namely by showing that Ms. Birkline, a PPI employee, reconciles PSL's books and coordinates between PSL's contractors and PPI—the Court finds that these factors are outweighed by the evidence of separation that PSL has presented. As such, the Court finds that PSL is not an alter ego of PPI and that PPI's jurisdictional contacts cannot be imputed to PSL.

**C.   Rule 4(k)(2)**

In the alternative, Plaintiffs argue that this Court may exercise jurisdiction over PSL under Rule 4(k)(2). Rule 4(k)(2) provides that,

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> (B) exercising jurisdiction is consistent with the

14

United States Constitution and laws.

Federal Rule of Civil Procedure 4(k)(2) (2012).

In the Fifth Circuit, claims falling under the federal courts' admiralty jurisdiction are considered to be claims arising under federal law for the purposes of Rule 4(k)(2). World Tanker Carriers Corp. v. M/V Ya Mawlaya, 99 F.3d 717, 723 (5th Cir. 1996). In order to show that Rule 4(k)(2) applies the plaintiff must demonstrate that (1) the defendant in question is not subject to the general jurisdiction of any other state, and (2) that exercising jurisdiction is consistent with the due process clause of the Fifth Amendment, meaning that the defendant has sufficient minimum contacts with the United States as a whole. Adams v. Unione Mediterranea Di Sicurta, 364 F.3d 646, 651 (5th Cir. 2004). The Fifth Circuit has stated "that a piecemeal analysis of the existence *vel non* of jurisdiction in all fifty states is not necessary" to prove part one of the test. Id. Rather, the court may confer jurisdiction where the "defendant does not concede to jurisdiction in another state." Id.

In forming this rule, the Fifth Circuit adopted the burden-shifting framework adopted by the United States Court of Appeals

15

for the Seventh Circuit.[5] Under this framework, the plaintiff must make a prima facie case that the rule applies by "showing (1) that the claim asserted arises under federal law, (2) that personal jurisdiction is not available under any situation-specific federal statute, and (3) that the putative defendant's contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements." U.S. v. Swiss American Bank, Ltd., 191 F.3d 30, 41 (1st Cir. 1999). Additionally, the plaintiff "must certify that, based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state." Id. Once plaintiff has made a prima facie case, then the burden shifts to the defendant to produce evidence that demonstrates that it is subject to jurisdiction in another state and/or that it has insufficient contacts with the United States

---

[5] In the Fifth Circuit case outlining Rule 4(k)(2), the court states that it agrees with the Seventh Circuit when deciding that a plaintiff should not have to engage in an analysis of "the existence of vel non of jurisdiction in all fifty states." Adams, 364 F.3d at 651. In making that statement, the court cites to the Seventh Circuit case, ISI Int'l., Inc. v. Borden Ladner Gervais LLP, 256 F.3d 548 (7th Cir. 2001). A reading of the Seventh Circuit case indicates that the Seventh Circuit based its analysis of the rule on the framework initially promulgated by the United States Court of Appeals for the First Circuit in U.S. v. Swiss American Bank, Ltd., 191 F.3d 30 (1st Cir. 1999). Because Fifth Circuit cases do not discuss what burden, if any, the plaintiff has in asserting Rule 4(k)(2), this Court looks to the framework outlined by the First Circuit and, eventually, adopted by the Fifth Circuit in order to determine whether or not the Plaintiffs in this case have adequately asserted Rule 4(k)(2), such that PSL should be forced to concede jurisdiction in a given state.

as a whole. Id.

In the instant case, the Court finds that Plaintiffs have failed to make a prima facie case that Rule 4(k)(2) applies. Specifically, the Court finds that Plaintiffs have failed to show that "the putative defendant's contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements." Id. The only evidence that Plaintiffs have presented to the Court that speaks to PSL's contacts with the nation is evidence that (1) PSL once listed a Houston address on an insurance policy, and (2) Ms. Birkline, a PPI employee, does some accounting work for PSL in Houston and maintains her own copy of PSL records in Houston. Such fleeting contacts with the United States are not sufficient to confer jurisdiction under Rule 4(k)(2) and, therefore, this Court declines to do so.[6]

For the foregoing reasons,

---

[6] Because the parties' have mentioned it, the Court briefly notes that PSL's situation is highly distinguishable from the situation of its co-defendant GSF. In the Court's previous assessment of GSF, it was clear that GSF employed over 300 Americans in multiple states; that GSF specifically targeted American workers—declining to offer its payroll services to foreign employees; and that GSF held itself out to those employees as having an office in Houston. February 22, 2012, Order and Reasons, Rec. Doc. 177. Here, there is no evidence that PSL specifically targets its services only to American citizens; there is no indication as to how many Americans PSL pays (or whether PSL only pays American citizens); there is no evidence that PSL pays Americans in multiple states; and PSL does not hold itself out to its "employees" or "contractors" as having an office in the United States (in particular, PSL's consulting agreement with Mr. Johnson specifically lists 35 Barrack Road, Third Floor, Belize City, Belize, as its address). See Def.'s Ex. 1 to Mot., Rec. Doc. 178-4, p. 1. Thus, there is no comparison to be drawn between GSF and PSL.

**IT IS ORDERED** that PSL's Motion to Dismiss is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against PSL are **DISMISSED without prejudice**.

New Orleans, Louisiana this 31st day of May, 2013.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE