UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHNSON | CIVIL ACTION |
| VERSUS | NO: 11-2773 c/w 12-1534 |
| | **APPLIES TO ALL CASES** |
| PPI TECHNOLOGY SERVICES, L.P., et al. | SECTION: **"J"** (3) |

### ORDER

    Before the Court are Defendant/Third Party Plaintiff PPI Technology Services, L.P. ("PPI") and Third-Party Defendant The Insurance Company of the State of Pennsylvania ("ISOP")'s **Cross Motions for Partial Summary Judgment (Rec. Docs. 284 & 291),** the parties' oppositions thereto (Rec. Docs. 294, 295), and the parties' reply memoranda (Rec. Docs. 301 & 303). The parties' motions were set for hearing on December 4, 2013, on the briefs. Having considered the motions and memoranda of counsel, the record, and the applicable law, the Court finds that PPI's motion should be granted for the reasons set forth more fully below.

1

**FACTS AND PROCEDURAL HISTORY**

This matter arises from a consolidated maritime personal injury action wherein Plaintiffs James Johnson and Robert Croke allege that they received various injuries when gunmen attacked the HIGH ISLAND VII, an oil rig platform off the coast of Nigeria, on which Johnson and Croke were working. Johnson alleges that he was working as an employee of PPI and/or PSL. He alleges that gunmen entered the rig and led him at gunpoint to his room and demanded money. They then led him back to the galley, where the other crewmembers were gathered; but, on the way to the galley, they shot him in the leg.

Croke alleges that he was working on the same rig, but as an employee of PPI only. Croke alleges that he was taken hostage on the rig during which time he was shot in the foot and hit by falling ceiling tiles. The gunmen then removed him from the rig and held him at a camp in Nigeria for ten days where he was tortured and denied treatment for his injuries. Croke alleges that he was eventually rescued from the camp amidst gunfire, bombings, and a helicopter raid. Johnson filed suit on November 8, 2011 and Croke filed suit on June 15, 2012. The matters were consolidated on June 20, 2012. Both actions bring claims under the Jones Act and claims for unseaworthiness under general maritime law. Plaintiffs also demand maintenance and cure.

The instant motions, however, arise from PPI's third-party claim against ISOP for denial of coverage in relation to Croke and Johnson's complaints. It is undisputed that ISOP issued a Foreign Commercial Package Policy ("the Policy") to PPI and that the Policy covered a period from April 1, 2010 to April 1, 2011. Therefore, the Policy was in effect when the incident at issue occurred in November 2010. After Johnson and Croke filed the claims described above against PPI, PPI timely notified ISOP of their claims; however, ISOP denied coverage. In ISOP's multiple letters denying coverage, it stated that coverage for Johnson and Croke's claims was excluded under various provisions, including: the Terrorism exclusion, Watercraft exclusion, workers' compensation exclusion, employer's liability exclusion, and crewmember exclusion. (PPI's MSJ, Exhs. D though I, Rec. Doc. 284; ISOP's Ans., Rec. Doc. 216, p. 12). PPI responded to ISOP's denial, but coverage was again denied in February 2013. In that letter, ISOP relied solely on the Terrorism exclusion. (Exh. I)

As a result of this denial, PPI filed a third-party claim against ISOP on January 31, 2013 wherein it seeks declaratory judgment that ISOP owes coverage to PPI and asserts claims for breach of contract and various violations of the Texas Insurance Code. PPI filed the instant motion for partial summary judgment on November 4, 2013 seeking a judgment that ISOP has a duty to

defend PPI in these proceedings. ISOP filed a cross motion for summary judgment on November 19, 2013. Both parties filed oppositions on November 26, 2013.

## LEGAL STANDARD & DISCUSSION

"Under the eight-corners or complaint-allegation rule, an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations." GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church, 197 S.W.3d 305, 308 (Tex. 2006); Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 15 (Tex. 2007).[1] In applying this rule, the pleadings should be interpreted liberally, and "[w]here the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997). In interpreting an insurance policy under Texas law, the Fifth Circuit explained that, when

---

[1] PPI is formed under Texas law and based in Texas, and the Policy was issued to PPI in Texas. The parties agree that Texas law governs this issue, and the Court finds the same; therefore, the Court will apply Texas law.

> the language used is subject to two or more reasonable interpretations, the construction which affords coverage will be adopted. The policy of strict construction against the insurer is especially strong when the court is dealing with exceptions and words of limitation. So long as it is not unreasonable, an interpretation favoring coverage will be adopted even if an interpretation militating against coverage is *more* reasonable.

Essex Ins. Co. v. Hines, 358 F. App'x 596, 598 (5th Cir. 2010) (internal citation omitted) "However, the court may not read facts into the pleadings, may not look outside the pleadings, and may not imagine factual scenarios which might trigger coverage." St. Paul Ins. Co. v. Texas Dep't of Transp., 999 S.W.2d 881, 885 (Tex. App. 1999).  When exclusions to coverage are at issue, the burden is on the insurer to prove that exclusions apply, and all inferences will be drawn in favor of the insured. Essex, 358 Fed. Appx. at 599.

PPI asserts that the duty to defend exists under several of the Policy's coverages, and ISOP rebuts this argument with various exclusions that it contends apply in the instant matter. A review of all of the parties' arguments is not required, however, because the Court finds that a duty to defend exists under the Commercial General Liability Policy, Coverage A for Bodily and Property Injury ("CGL Coverage A"). This provision states, in pertinent part:

> **We** will pay those sums that an insured becomes legally

>obligated to pay as damages because of **bodily injury** [...] to which this insurance applies. **We** will have the right and duty to defend the insured against any suit seeking those damages.

(Rec. Doc. 284-2, ISO 0022) The parties do not dispute that this provision is triggered by Plaintiff's claims against PPI; however, ISOP contends that the Terrorism exclusion, the Watercraft exclusion, and the Employer's Liability exclusion all apply to exempt ISOP from providing coverage.

### A. Terrorism Exclusion

The Policy provides that coverage does not exist for "[b]odily injury [...] arising directly or indirectly as a result of or in connection with **terrorism** including, but not limited to, any contemporaneous or ensuing **bodily injury** [...] caused by fire, looting or theft." (Rec. Doc. 284-2, ISO 0028) Terrorism is defined in the Policy as:

>the use or threatened use of force or violence against persons or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force when the effect is to intimidate or coerce a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

(Rec. Doc. 284-2, ISO 0045).

The main issue in determining whether the Terrorism exclusion applies is whether the Nigerian gunmen's actions had

the effect of intimidating or coercing a segment of the civilian population or disrupting any segment of the economy. ISOP contends that the gunmen's acts had both of these effects because: (1) they intimidated all of the vessel workers, which would qualify as a segment of the population, and (2) they interrupted oil rig operations for several days, which is a segment of the economy. PPI argues that this characterization is overly broad and that the gunmen were not "terrorists." Instead, the gunmen were ordinary robbers who used violence to effect a robbery of the vessel. Further, PPI points out that it is not alleged that the gunmen's actions halted rig operations, and that ISOP should not be allowed to invent facts that are not included in the original complaints. PPI further argues that allowing ISOP to interpret the definition of Terrorism so broadly renders the coverage illusory. <u>Trinity Universal Ins. Co. v. Cowan</u>, 945 S.W.2d 819, 828 (Tex. 1997), and that the Terrorism exclusion is ambiguous because it contains undefined terms, such as "population" and "economy," without indicating which populations or economies are contemplated by the Policy.

The policy provisions regarding Terrorism are clear. The Policy's definition of Terrorism is divided into three relevant elements: (1) use of violence; (2) that is undertaken by a person or group of persons; (3) that has the effect of intimidating a

segment of the population or disrupting a segment of the economy. It is undisputed that the first two elements are met; however, it is unclear whether the gunmen's actions had the effect of intimidating a segment of the population and/or disrupting a segment of the economy. On the one hand, it is reasonable to determine that: (1) this was merely an act of a violent robbery and kidnapping for pecuniary gain, and (2) that it only had an effect on those present in the HIGH ISLAND VII, which is not a segment of the population. Conversely, it is also reasonable to determine that the gunmen's actions were acts of piracy, which is an ongoing problem in some areas, and has the effect of chilling maritime activity in the waters on Africa's coast, thereby affecting that segment of the economy. Further, such actions could intimidate all vessel workers in that geographic region, which group constitutes a segment of the civilian population.

For the purpose of resolving the instant matter, this issue need not be firmly resolved because both of these interpretations are reasonable. Therefore, the Court must err in favor of coverage and find that the Terrorism exclusion does not relieve ISOP of its duty to defend based on the Fifth Circuit's rulings that an insurer shall have a duty to defend when in coverage is in doubt. <u>Essex</u>, 358 Fed. Appx at 597 <u>citing</u> <u>Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.</u>, 538 F.3d 365, 369

(5th Cir. 2008).

## B. Employer's Liability Exclusion

The Policy excludes coverage for bodily injury to an employee when the injury arises "out of and in the course of (a) employment by the insured; or (b) performing duties related to the conduct of the insured's business." (Rec. Doc. 283-3, ISO 0024) The parties appear to agree that this does not apply as it relates to Johnson, because he alleges that he was employed by PSL or PPI, and that ambiguity must be resolved in favor of PPI. With regard to Croke, however, ISOP alleges that because Croke claims that he was employed by PPI only, and that he was injured while working on the HIGH ISLAND VII, this exclusion applies. PPI did not address this exclusion as it relates to Croke, and neither party address this exclusion in their respective reply briefs.

It is rather clear that Croke's injuries did not "arise out of" his employment with PPI and/or his duties related to PPI's business, and, in fact, ISOP argues just that when it contends that there is no coverage under CGL Coverage B for personal injury. ISOP states in its brief that "the 'offense' i.e. the false imprisonment or wrongful detention of oil rig workers by a group of armed gunmen with no association with PPI, does not in any way 'arise out of' PPI's business nor is it in any way

attributable to PPI's business." (Rec. Doc. 294, p. 12). The same can be said for all of Plaintiff's injuries, not just the alleged false imprisonment; therefore, the Employer's Liability exclusion does not apply to relieve ISOP of its duty to defend PPI.

### C. Watercraft Exclusion

The watercraft exclusion bars coverage for "Bodily Injury ... arising out of the ownership, maintenance, use, or entrustment to others of any ... watercraft **owned or operated by or rented or loaned to any insured.**" (Rec. Doc. 284-2, ISO 0026) (emphasis added). ISOP contends that because Johnson and Croke allege that they are Jones Act seamen, and a Jones Act seaman "must be one whose duties contribute to the operation of the vessel," it necessarily follows that Johnson and Croke, and by extension, PPI, were "operating" the vessel and are barred from coverage under this provision. (Rec. Doc. 294, p. 11) PPI contends that there is no allegation that PPI, the insured party, owned, operated, rented, or loaned the vessel at issue; and, in fact, the Complaint expressly alleges that Transocean owned and operated the vessel. (Rec. Doc. 1, p. 3, ¶ VI).

Johnson and Croke's complaints clearly allege that Transocean was the operator of the HIGH ISLAND VII, and the Court rejects ISOP's argument that Johnson and Croke's duties aboard the vessel can make their employer, PPI, the "operator" of the

vessel by extension.[2] If that were the case, then this exclusion would apply to any watercraft on which a PPI employee stepped foot. Further, even if PPI were the operator of the vessel, the Court cannot say that Johnson and Croke's injuries arose out of the use of the vessel. Instead, Plaintiffs' injuries arose out of the gunmen's attack, which was completely unrelated to the operation of the vessel. Therefore, ISOP is not relieved from its duty to defend under this policy exclusion.

No other exclusions apply to CGL Coverage A; therefore, ISOP has a duty to defend under this portion of the Policy.

Accordingly,

**IT IS ORDERED** that PPI's **Motion for Partial Summary Judgment (Rec. Doc. 284)** is **GRANTED.**

**IT IS FURTHER ORDERED** that ISOP's **Cross Motion for Partial Summary Judgment (Rec. Doc. 291)** is **DENIED.**

---

[2] See, Grigsby v. Coastal Marine Service of Tex., Inc., 412 F.2d 1011, 1037 (5th Cir. 1969). In this case, the insured/employer supplied pumps to a vessel that was undergoing maintenance. Grigsby, 412 F.2d at 1037. The insurer argued that, because the Court determined that the insured/employer was subject to certain federal safety regulations regarding ship repair because its employers were engaged in ship repair or related work, then it follows that the insured/employer is also engaged in the "maintenance" of the ship in the context of a watercraft exclusion to an insurance policy. Id. The Fifth Circuit rejected this argument, finding that such a reading "would exclude liability for damage to the vessel simply because of its status of undergoing 'maintenance, operation, use, loading or unloading,'" and that such a reading is too broad. Id.

New Orleans, Louisiana this 17th day of December, 2013.

```
_____
      CARL J. BARBIER
      UNITED STATES DISTRICT JUDGE
```